United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>GREGORY J. DANIELS,<br><br>    Defendant.<br>_____/ | No. CR-05-00184 MAG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (Docket Nos. 9, 10)** |

Having considered the papers filed in support of, and in opposition to, Defendant Gregory J. Daniels' motion, and having heard and considered the testimony presented at the evidentiary hearing herein, and good cause appearing therefor, the Court hereby GRANTS IN PART and DENIES IN PART Mr. Daniels' motion to suppress evidence.

## I. DISCUSSION

The United States has charged Mr. Daniels with driving under the influence of alcohol in violation of 36 C.F.R. § 1004.23(a)(1) and driving with a blood alcohol content of 0.08 or more in violation of 36 C.F.R. § 4.23(a)(2). United States Park Police Officer Campbell administered a breathalyzer test on Mr. Daniels in connection with Mr. Daniels' arrest. Using the Intoxilyzer 5000 machine, Officer Campbell took three breath samples from Mr. Daniels. The first sample yielded a 0.189 result; the second sample yielded an "invalid sample" reading; and the third sample yielded a 0.207 result. Mr. Daniels now moves to suppress the results of the first and third samples, relying on Rule 702 of the Federal Rules of Evidence.

1  A.    0.189 Breath Sample

2  Federal Rule of Evidence 702 provides that

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert . . . may testify thereto in the form of an opinion or otherwise if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. According to Mr. Daniels, the first breath sample -- which yielded a reading of 0.189 blood alcohol level -- is inadmissible under Rule 702 because the sample was obtained using scientifically unreliable methods. More specifically, he was not observed for at least fifteen minutes prior to the taking of the first breath sample as indicated by the log from the detention room. The government contends, on the other hand, that Officer Campbell did observe Mr. Daniels for fifteen minutes as indicated by the test checklist completed by Officer Campbell.

Both Mr. Daniels' expert and the Government's expert agree that the proper procedure for administering a breathalyzer test is to observe the subject for fifteen minutes before taking breath samples. Both experts agree that one of the main reasons for such an observation period is to ensure that any mouth alcohol, which can skew breathalyzer results, will have dissipated before the breath samples are taken. The scientific literature also recommends a fifteen-minute observation period. *See Brannon*, 146 F.3d at 1196, citing Kurt M. Dubowski, *Quality Assurance in Breath-Alcohol Analysis*, 18 J. Analytical Toxicology 306 (1994) and 2 Richard E. Erwin, Defense of Drunk Driving Cases § 18.03 (3d ed. 1995). Mr. Daniels' expert, forensic toxicologist Dr. Michael Slade, testified credibly that such an observation period is essential to insure reliability of the test result. The importance of a pre-test observation period is underscored here by the fact that a minute after the first breath sample was taken, a second sample registered invalid, indicating a likelihood of mouth alcohol present shortly after the first sample was taken. Therefore, the Court concludes that if Mr. Daniels was not observed for at least fifteen minutes prior to the first breath sample, the method used to administer the entire breathalyzer test would have been so unreliable as to warrant exclusion, under Rule 702, of the first sample. The Court notes this was not an issue in *Brannon* since there,

the officer did observe the defendant for twenty minutes prior to taking the breath sample at issue. *See Brannon*, 146 F.3d at 1196.

Whether Mr. Daniels was observed for fifteen minutes is in dispute. Where the reliability of the test result and scientific evidence thereof turns on disputed issues of fact, pre-trial exclusion of such evidence under Fed. R. Evid. 702 is not appropriate. *See* Fed. R. Evid. 104(b) ("When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition."). As the advisory committee notes to Rule 702 point out, a trial court is not authorized "to exclude an expert's testimony on the ground that the court believes one [party's] version of the facts and not the other." Fed. R. Evid. 702, 2000 advisory committee notes. Thus, the motion to suppress the first breath sample under Rule 702 must be denied at this point. However, the denial is without prejudice and may be renewed at trial after testimony is taken and evidence introduced on this question.

Mr. Daniels contends that the breathalyzer results were unreliable, even if he was observed for fifteen minutes, because the subsequent samples were either invalid or unreliable and that a valid breathalyzer test consisting of only one valid sample is *per se* unreliable. However, the Court's exclusion of the subsequent samples (see discussion *infra*) does not render the test invalid *per se*. In *United States v. Brannon*, 146 F.3d 1194 (9th Cir. 1998), the Ninth Circuit acknowledged that "[a] single uncompleted test [comprising of only one breath sample] is not what the scientific literature recommends" but still found that the district court did not abuse its discretion in admitting, over the defendant's Rule 702 objection, results of an Intoxilyzer 5000 blood-alcohol test comprising of only one breath sample. *Id.* at 1196. That Officer Campbell may have failed to comply with California regulations on breathalyzer test does not bar Rule 702 admissibility. *See Brannon*, 146 F.3d at 1196 ("California . . . requires that there be two complete tests for breathalyzer evidence to be admitted. Cal. Code Regs. tit. 17, § 1221.4(a)(1). We are not bound by this procedural requirement . . . [p]rudent though the California rule may be, we do not believe that it is within our power to add it to the requirements of the Federal Rules of Evidence.").

3

1  To the extent Mr. Daniels argues that *Brannon* is not controlling because it preceded the
2  2000 amendment to Rule 702, the Court rejects the argument.  The Ninth Circuit in *Brannon* found
3  that the district court had complied with *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579
4  (1993), *see Brannon*, 146 F.3d at 1197, and, as pointed out by one learned treatise, the 2000
5  amendment to Rule 702 "was not intended to overrule *Daubert* [and] the *Daubert* factors . . . still are
6  pertinent to resolving the issues raised by the amended [r]ule." 29 Wright & Gold, Fed. Prac. &
7  Proc. § 6266 (Supp. 2005).
8  As for any argument that the first breath sample is unreliable because it preceded the "invalid
9  sample" breath sample by one minute, the Court finds that this argument goes to the weight of the
10 evidence and not its admissibility so long as Mr. Daniels was observed for at least fifteen minutes
11 before the first sample was taken.  *See Brannon*, 146 F.3d at 1196 (finding that district court did not
12 abuse its discretion in admitting evidence of Intoxilyzer results when test administrator "observed
13 Brannon for twenty minutes before administering the test.  The effect on Brannon's mouth fluids
14 from recent drink would, in the normal course, have dissipated.").
15 In sum, the motion to suppress the test results of the first sample is denied without prejudice.
16 B.    0.207 Breath Sample
17 As for the third breath sample -- the sample with the 0.207 reading -- Mr. Daniels argues that
18 it should be excluded because it was immediately preceded by an "invalid sample" reading.
19 Because mouth alcohol likely caused the "invalid sample" reading, Mr. Daniels argues, the 0.207
20 sample is likely false and scientifically unreliable.
21 The Court finds that the 0.207 breath sample was not obtained using reliable scientific
22 methods and is therefore inadmissible pursuant to Rule 702.  The reliability of the 0.207 breath
23 sample is significantly compromised because the preceding breath sample yielded an "invalid
24 sample" reading.  Both parties' experts testified that an "invalid sample" reading suggests the
25 presence of mouth alcohol.  They differ in their interpretation of the result as to the likelihood that
26 such a reading is caused by mouth alcohol and not, *e.g.*, unusual breath patterns.  At the evidentiary
27 hearing, the United States' expert, Robert Jansing, a Detective Sergeant with the United States Park
28 Police, testified that the Intoxilyzer 5000 yields an "invalid sample" reading for several reasons,

1  only one of which is mouth alcohol. Jansing bases his knowledge on a forty-hour training course on
2  the Intoxilyzer 5000 as well as three other Intoxilyzer training courses. Mr. Daniels' expert, Dr.
3  Michael Slade, testified that the "invalid sample" result is most likely due to mouth alcohol rather
4  than any other cause. Dr. Slade, a forensic toxicologist, has a Ph.D. in Pharmaceutical Chemistry
5  from the University of California, San Francisco, was formerly the Chief Forensic Toxicologist for
6  the City of San Francisco (1979-1993), and has lectured and published papers on various aspects of
7  forensic toxicology. Dr. Slade was trained on the use of the Intoxilyzer 5000 by the San Francisco
8  crime labs, Department of Justice, and County of Sacramento. Dr. Slade has testified in court
9  numerous times on the use of the Intoxilyzer 5000. At the evidentiary hearing, Dr. Slade further
10 demonstrated his familiarity with the scientific literature in this area. The Court finds that Dr.
11 Slade's interpretation of the "invalid sample" message is more credible than Sergeant Jansing's.
12 Accordingly, the Court finds the "invalid sample" likely resulted from mouth alcohol when the
13 second sample was taken from Mr. Daniels.
14     Both parties' experts agree that the presence of mouth alcohol can skew breathalyzer results.
15 Dr. Slade testified that even with mouth alcohol, a "valid" result can be obtained; the front slope
16 detector of the breathalyzer which is supposed to detect mouth alcohol and register an invalid test
17 result is not failsafe. Accordingly, Dr. Slade testified that if an "invalid" result is obtained, it is
18 important to observe the test-taker for fifteen additional minutes -- the time it takes for mouth
19 alcohol to dissipate. It is undisputed that no such observation period preceded the third breath
20 sample after the "invalid" sample. Therefore, the method used to obtain the 0.207 sample (taking it
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

5

within one minute after discovering a likelihood of mouth alcohol) is scientifically unreliable. Evidence of that sample test result is excluded pursuant to Rule 702.

## II. <u>CONCLUSION</u>

For the foregoing reasons, Mr. Daniels' motion to suppress is granted in part and denied in part.

IT IS SO ORDERED.

Dated: October 4, 2005

_____
EDWARD M. CHEN
United States Magistrate Judge