UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR-05-00184 MAG |
| Plaintiff, | |
| v. | **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| GREGORY J. DANIELS, | |
| Defendant. | |

Defendant Gregory J. Daniels is charged with driving under the influence of alcohol in violation of 36 C.F.R. § 1004.23(a)(1) and driving with a blood alcohol content of 0.08 or more in violation of 36 C.F.R. § 4.23(a)(2). On October 4, 2005, this Court granted in part and denied in part Defendant's Motion to Suppress Evidence. In particular, the Court suppressed the second test result from the breathalyzer administered to Defendant. It denied without prejudice the motion to suppress the first result.

Trial was set and commenced on December 19, 2005. The Government called four witnesses: (1) Officer Faccipointi who arrested Defendant, (2) Officer Campbell who administered the breathalyzer test, (3) Sergeant Jansing who was responsible for maintaining the Intoxilyzer 5000 used in this case, and (4) Jeffrey Zehnder, a forensic toxicologist. Defendant called Dr. Michael Slade, a forensic toxicologist. The Government's Exhibits Nos. 3 and 7 and Defendant's Exhibits A and B were admitted into evidence.

As to the elements of the first charge, the parties agreed and there is no dispute that Defendant was, on February 13, 2005, operating and was in actual physical control of a motor vehicle within the boundaries of the area administered by the Presidio Trust. The issue for trial was whether he was under the influence of alcohol to a degree that rendered him incapable of safe operation. As to the second charge, the issue for trial was whether Defendant had 0.08 percent or more by weight, of alcohol in his blood or breath while driving the vehicle.

Having heard the evidence at trial, and having evaluated the substance and credibility of the witnesses, the Court renders the following Findings of Fact and Conclusions of Law.

## I. FINDINGS OF FACT

### A. Count One

The Court finds that as to Count One, the Government has proven that Defendant while operating the vehicle, was under the influence of alcohol to a degree that rendered him incapable of safe operation. Officer Faccipointi testified credibly that Defendant admitted to him that he had had two, possibly three, beers that evening. The Court finds credible his testimony that Defendant did not stop when the Officer turned the flashing lights on the light bar or even when additional flood lights were directed at Defendant during Officer Faccipointi's pursuit. Defendant could have pulled over on Washington Boulevard when first pursued but did not until he reached Compton Road. In explaining why he did not pull over immediately, Defendant said he did not notice being pursued by Officer Faccipointi. Officer Faccipointi's testimony indicates Defendant's senses were impaired.

Officer Faccipointi's description of Defendant's physical appearance and behavior was also credible and indicative of intoxication. Officer Faccipointi described Defendant's eyes as bloodshot and watery, his speech as slurred, and his breath as having an odor of alcohol. Officer Faccipointi also testified credibly that when Defendant exited the vehicle, he had to lean against the car for balance.

The Court further finds credible Officer Faccipointi's testimony about the administration of the field sobriety test ("FST"). According to the Officer, Defendant failed each of the three portions of the FST. On the Horizontal Gaze Nystagmus Test, Defendant had difficulty complying with the Officer's instructions, turning his head instead of keeping it still. The Officer noticed Defendant's

eyes did not follow the pen smoothly and nystagmus was apparent before reaching 45 degrees. On the Walk and Turn Test, Defendant did not follow instructions. He did not keep his hands at his side. Instead they swayed. He did not walk heel to toe. On the Leg Stand Test, Defendant swayed while trying to stand on one leg. He put his toe down rather than keeping it off the ground eight times within the count to 20.

Officer Faccipointi concluded, after the FST, that Defendant was intoxicated. He testified credibly that he had administered the FST some 25-30 times before this occasion and that he had reached a conclusion that the subject was drunk about 50% of the time. The Court credits his testimony that in every case in which he had so concluded, his conclusion was confirmed by a breathalyzer test.

While the Court does not credit certain aspects of Officer Faccipointi's testimony – in particular his testimony that he observed Defendant driving unusually slowly, weaving on to the yellow dividing line, and had difficulty parking, as those details were not mentioned in his written report made the night of the arrest – the Court finds credible the remainder of his testimony which was noted in his report. Officer Faccipointi's demeanor and answers appeared forthright.

Finally, the Court notes that Officer Faccipointi's observations were corroborated by the first breathalyzer test result obtained about an hour after the stop. That test recorded a blood alcohol level of 0.189 percent. As discussed below, that test was valid and admissible.

The Court acknowledges that in viewing the video taken of Defendant while he was in custody, there are no obvious signs of intoxication. However, most of the time Defendant was seated. He was not asked to do anything that required significant balance, attention or dexterity. Most importantly, there was no sound. Any slurred speech or odor of alcohol could not be discerned from the video. Morever, by the time Defendant was in custody, more than a half hour had transpired, affording some time for the effect of the alcohol to dissipate.

Taken together, the evidence establishes that Defendant was driving while under the influence of alcohol to a degree that rendered operation of the vehicle unsafe.

B.  Count Two

As to the Count Two, the Court finds that Defendant's blood or breath alcohol level was at or over .08% while in actual physical control of his car. In the order granting in part and denying in part the motion to suppress, the Court concluded that if the Government proved Defendant was observed for 15 minutes prior to administration of the first breath test, and provided all other aspects of the Intoxilyzer were proper, this test result would be admitted. The testimony of Officer Campbell and the video of the breathalyzer test (and observation period preceding it) established that Defendant was indeed observed at close range for at least 15 minutes before the first sample was taken. Officer Campbell was within a few feet of Defendant at all times. The Court credits his testimony that he did not hear or observe Defendant regurgitate or burp during that observation period. While Officer Campbell made a number of clerical and administrative errors, and so admitted under oath, none of that impairs his veracity. The fact that Defendant had to blow twice into the Intoxilyzer before getting a reading was proper procedure according to both experts. Sergeant Jansing testified that the Intoxilyzer was properly maintained. The Court finds his testimony credible and was corroborated by the log which showed its calibration was checked per factory standards. The test result is admissible, and Defendant's objection thereto is overruled.

That a second sample registered as an Invalid Sample, presumptively because of the presence of mouth alcohol, is explained by the fact that during the taking of breaths for the second test (after the first reading of .189% was obtained), Defendant coughed. This is visible on the video. Thus, mouth alcohol was likely produced (by the cough) *after* the first test was completed. Even if there had been mouth alcohol present during the first test, both experts testified that published studies show that when the front slope detector (which is supposed to detect mouth alcohol and register an Invalid Sample test result) is fooled, the highest contribution from mouth alcohol to a breath test has not exceeded .08% to .09% according to published studies. Although Dr. Slade testified he thought he may have seen higher contributions levels in published studies, he could not cite any, and that aspect of his testimony was inconsistent with his prior testimony at the suppression hearing. Thus, the Court does not credit his testimony that studies show a greater contribution than .09% from

4

mouth alcohol.  Hence, even assuming a .09% contribution from mouth alcohol fooled the front slope detector in this case, the net blood alcohol level in Defendant would still have been .099%.

Although the accepted industry and scientific standard is to require two breathalyzer tests results which come within .02% of each other, and only one valid test result was obtained here, this does not preclude the Court from concluding beyond a reasonable doubt that Defendant's blood alcohol content was greater than .08%.  As noted in this Court's prior order, the Ninth Circuit has held a single test is not invalid per se and is admissible.  *United States v. Brannon*, 146 F.3d 1194 (9th Cir. 1998).  That fact that the single test here reliably indicated a result of .189%, well above .08% provides a substantial margin of confidence.  It would be a closer question had the first result been *e.g.* .09% or .1% or if there were independent reasons to doubt the reliability of the test.  Here Mr. Zehnder testified that the log for this Intoxilyzer shows consistency between the first and second tests for other subjects.  Defendant has not pointed to any evidence of any problems or inconsistency between first and second test results obtained from the Intoxilyzer used in this case.  There is no evidence suggesting this single result was suspect.  Hence, there is no reason to doubt the reliability of the .189% other than the fact that it was not corroborated as it ideally should have been.  Finally, the observations made by Officer Faccipointi about Defendant's intoxicated appearance and behavior corroborate the breathalyzer test result here.

## II.  CONCLUSIONS OF LAW

Based on the above findings, the Court concludes that the Government has met its burden of proving beyond a reasonable doubt that:

1. Defendant operated or was in actual physical control of a motor vehicle while under the influence of alcohol to a degree that rendered operation of the vehicle unsafe on land administered by the Presidio Trust in San Francisco, California, in violation of 36 C.F.R. § 1004.23(a)(1), and

2. Defendant was in actual physical control of a motor vehicle while his blood or breath alcohol level was at or above .08% on land administered by the Presidio Trust in San Francisco, California in violation of 36 C.F.R. § 4.23(a)(2).

Accordingly, the Court finds the Defendant guilty of both Counts One and Two of the Information herein.

Sentencing in this matter shall be set for April 26, 2006 at 9:30 a.m. Defendant is directed to report to the U.S. Probation Office within seven days of this Order so that work of the Pre-Sentence Report may be commenced.

IT IS SO ORDERED.

Dated: January 4, 2006

_____
EDWARD M. CHEN
United States Magistrate Judge